T.C. Memo. 2016-236

UNITED STATES TAX COURT

URVE V. MOYER, INCOMPETENT, CALVIN L. MOYER, NEXT FRIEND,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13990-12.　　　　　　　　　Filed December 27, 2016.

Calvin L. Moyer (specially recognized), for petitioner.

Harry J. Negro and Jason M. Kuratnick, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, Judge:  The respondent (the "IRS") issued a notice of

deficiency to the petitioner, Urve V. Moyer, for the 2009 tax year determining an

income-tax deficiency of $9,006, a failure-to-file penalty under section 6651(a)(1)

of $1,984, a failure-to-pay penalty under section 6651(a)(2) of $882, and an

**[*2]** estimated-tax penalty under section 6654(a) of $211.[1]  Urve Moyer timely filed a petition under section 6213(a) for redetermination of the deficiency and the penalties.[2]  We have jurisdiction under section 6214(a).

Urve Moyer concedes she is liable for the section 6651(a)(1), 6651(a)(2), and 6654(a) penalties.  The only remaining issues for resolution are:

(1) Whether Urve Moyer is entitled to a deduction for tax-preparation fees of $2,711 for 2009 taxable year.  We hold that she is not.

(2) Whether Urve Moyer is entitled to deduct certain items as business expenses under section 162(a).  We hold that she is not.

### FINDINGS OF FACT

Some facts are stipulated and are so found.  The stipulation of facts is incorporated by this reference.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

[2]Urve Moyer resided in Delaware when she filed her petition.  Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Third Circuit unless the parties designate the Court of Appeals for another circuit.  See sec. 7482(b)(1) and (2).

**[*3]**   Urve Moyer's husband, Calvin Moyer, was educated as a chemist.  In 1968 he joined DuPont, where he worked chiefly in human relations.  As part of his duties he trained DuPont employees in a variety of human-relations topics.

In 1992, DuPont outsourced much of its human-relations training.  Calvin Moyer took an early retirement from DuPont in January 1992 at the age of 50 after 25 years of service.  Sometime after Calvin Moyer retired, but before 2004, both Calvin Moyer and Urve Moyer began receiving pensions from DuPont.  They also both began receiving Social Security benefits.

In 1992, after retiring from DuPont, Calvin Moyer and four other retired DuPont employees started a business to provide DuPont with human-relations-training services as an outside contractor.  They provided services similar to those they had provided when they worked at DuPont.  They ultimately disagreed on the strategy for the business and amicably agreed to cease doing business together in 1994.

In 1994, Calvin Moyer and Andrew A. Moyer (no relation) formed Strategic Learning Systems, Inc. ("SLS").  SLS elected S corporation status for federal-tax purposes.  SLS provided human-relations training as a contractor.  It provided in-class human-relations training on a variety of topics and created several brochures marketing its training services.  These trainings were structured as one-

[*4] day workshops.  Initially, DuPont was SLS's only client.  DuPont remained SLS's primary client and constituted at least 80% to 90% of SLS's total business for a time.

In 1996, Andrew Moyer separated from SLS.  Calvin Moyer became the sole owner of SLS.  He ran SLS himself.

In 2005, SLS lost DuPont as a client.  SLS did not have other regular clients.  SLS did not print any marketing brochures after 2006.  SLS had no gross receipts for 2010, 2011, 2012, 2013, 2014, or 2015.

SLS neither kept contemporaneous books or records nor maintained a budget.  The sole owner and operator of SLS, Calvin Moyer, did not use books or records to evaluate the financial performance of SLS.  Nor did he timely file a tax return for SLS for the 2004, 2005, 2006, 2007, or 2008 taxable year.  SLS filed delinquent returns for these years on Forms 1120S, "U.S. Income Tax Return for an S Corporation", in connection with previous Tax Court cases.  This was in 2014, which was not only after the due dates for the returns, but also after the IRS had issued notices of deficiency to him (as the shareholder of SLS) or to his wife (because she signed a joint return with him).  As Calvin Moyer acknowledged in his testimony, the preparation of the Forms 1120S in 2014 was the first occasion

[*5] on which he ever determined the annual expenses of the S corporation for tax purposes or any other purpose.

Neither Urve Moyer nor Calvin Moyer timely filed a federal income tax return for the 2009 taxable year, nor did SLS.

On February 27, 2012, the IRS mailed Urve Moyer a substitute for return ("SFR") and a notice of deficiency for her 2009 taxable year. The notice of deficiency used the married-filing-separately filing status and determined a deficiency of $9,006 along with penalties pursuant to sections 6651(a)(1), 6651(a)(2), and 6654(a).

Urve Moyer timely filed a petition with this Court.

On October 20, 2014, Urve Moyer and Calvin Moyer submitted to the IRS a joint federal income tax return for the 2009 taxable year on Form 1040, "U.S. Individual Income Tax Return". This return included itemized deductions on Schedule A, "Itemized Deductions". Calvin Moyer also submitted to the IRS an income tax return for SLS on Form 1120S for the 2009 taxable year. Calvin Moyer was the sole owner of SLS during the 2009 taxable year. He admitted in his testimony that SLS has not earned a profit since at least 2004. The losses reported on the Forms 1120S for 2009 and prior years were as follows:

[*6]

| Year | Gross receipts | Expenses | Loss |
|------|----------------|----------|------|
| 2004 | $4,618 | $39,884 | ($35,266) |
| 2005 | 6,241 | 14,523 | (8,282) |
| 2006 | 94 | 18,744 | (18,650) |
| 2007 | 1,289 | 28,583 | (27,294) |
| 2008 | 2,500 | 20,196 | (17,696) |
| 2009 | 0 | 5,795 | (5,795) |

On the 2009 Form 1040, the Moyers reported wage income of $10,998, total taxable retirement distributions of $59,202, and total gross Social Security benefits of $41,372. On that Form 1040 they claimed a deduction for a passthrough loss of $5,795 from SLS for the 2009 taxable year. They also claimed a deduction for tax-preparation fees of $2,711 on the Schedule A.

The IRS examined the Moyers' late-filed joint return for 2009. It disallowed the claimed deductions for tax-preparation fees of $2,711 and the $5,795 passthrough loss from SLS.

After filing her Form 1040 late, Urve Moyer provided the IRS an assortment of receipts, invoices, and order confirmations and asserted that these documents substantiated the business expenses of SLS for the 2009 taxable year. She

[*7] introduced these documents at trial.  This assortment of documents indicated that Calvin Moyer or SLS paid for the following items:

- 2 computers
- 2 monitors
- 2 speakers
- 5 wireless mice
- 4 microphones
- 4 webcams
- 7 printers
- 5 boxes of blank DVDs
- 150 cooler bags
- 1 folding table
- 1 digital camera
- Various other ordinary electronic and office supplies

The documentation also included information about a monthly cable television charge, and a family talk telephone plan with four telephone numbers.

Before trial, the parties agreed that the following are the correct amounts of various tax items reported on Urve Moyer's joint return for 2009:

[*8]

| Item | Per return | Per exam | As agreed |
|---|---|---|---|
| Wages | $10,998 | $11,324 | $11,324 |
| Interest income | 0 | 103 | 103 |
| Retirement distribution | 59,202 | 59,403 | 59,403 |
| Social Security (gross) | 41,372 | 41,012 | 41,012 |
| IRA deduction | 500 | 500 | 500 |
| Total exemption amount | 7,300 | 7,300 | 7,300 |
| Schedule A (taxes paid) | 5,073 | 5,073 | 5,073 |
| Schedule A (interest paid) | 14,286 | 14,286 | 14,286 |
| Schedule A (charitable gifts) | 150 | 150 | 150 |
| Total payments and credits | (6,401) | (6,401) | (6,401) |

The parties also stipulated that Urve Moyer is liable for penalties pursuant to sections 6651(a)(1), 6651(a)(2), and 6654(a) for the 2009 taxable year.

At issue remains (1) whether Urve Moyer is entitled to a deduction on Schedule A for tax-preparation fees and (2) whether she is entitled to deduct the claimed passthrough loss from SLS. The IRS argues that she did not substantiate the tax-preparation fees. The IRS does not dispute that the expenses stemming from the passthrough loss were incurred, but it asserts that none of the expenses

**[*9]** were ordinary and necessary expenses of an active trade or business for the 2009 taxable year.[3]

## OPINION

The taxpayer generally has the burden of proving that the determinations in the notice of deficiency are incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Urve Moyer does not contend that the conditions set forth in section 7491(a) for shifting the burden of proof to the IRS have been satisfied. Nor does the record show that the conditions have been satisfied. Thus, the burden remains on her for all remaining issues. See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

(1)    Tax-preparation fees

Urve Moyer's only posttrial brief (her opening brief; she did not file an answering brief despite being granted several extensions of time to do so) does not address the issue of the deductions she claimed on her Schedule A for tax-

---

[3]In a case involving a deficiency determination with respect to Urve Moyer's 2007 tax year we held that she was entitled to a $237 deduction for expenses passed through from SLS to her husband. Moyer v. Commissioner, T.C. Memo. 2015-45, at *10. For the 2007 year, as with the 2009 year, she filed a joint return with her husband and therefore had a tax liability based on her and her husband's combined gross income, including his income and losses passed through to him by SLS. See sec. 1.6013-4(b), Income Tax Regs.; see also sec. 1366(a). In the 2007 case the IRS did not question SLS's status as a trade or business. It does in this case.

**[\*10]** preparation fees.  Issues that are not addressed in the opening brief are considered conceded.  See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).  Therefore, she has waived any arguments regarding the deductibility of her tax-preparation fees.  See Rule 151; Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).  Accordingly, we hold that she is not entitled to an itemized deduction on Schedule A for her tax-preparation fees.

(2)    Active trade or business

Section 162 allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  The IRS asserts that Calvin Moyer's alleged business conducted through SLS[4] was an activity not engaged in for profit (and therefore was not an active trade or business) within the meaning of section 183 and that the deductions attributable to that activity should be limited accordingly.  See sec. 183(a) and (b).  Whether an activity is engaged in for profit for purposes of section 162 and section 212 is

_____

[4]The SLS activity was Calvin Moyer's, not Urve Moyer's.  He owned SLS and conducted the activity reported by SLS on its Form 1120S.  But Urve Moyer filed a joint return with Calvin Moyer.  Although the return was filed late, it established a joint liability against Urve Moyer for the income tax on the couple's combined income.  See sec. 1.6013-4(b), Income Tax Regs.  This combined income is calculated by including Calvin Moyer's passthrough loss from SLS.  See sec. 1366(a).

[*11] determined under section 183.  See King v. Commissioner, 116 T.C. 198, 204-205 (2001).  Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."  If an activity is not engaged in for profit, section 183(b) allows only those deductions that are not dependent upon a profit motive and those deductions that would otherwise be permitted if the activity was engaged in for profit, but only to the extent that the gross income derived from the activity exceeds the deductions that are not dependent upon a profit motive.

Whether a taxpayer is engaged in an activity for profit turns on whether the taxpayer has an actual and honest objective of making a profit.  Dreicer v. Commissioner, 78 T.C. 642, 644 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983).  A reasonable expectation of profit is not required as long as the taxpayer has an actual and honest objective of making a profit.  Sec. 1.183-2(a), Income Tax Regs.; see also Dreicer v. Commissioner, 78 T.C. at 644-645; Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981).

Whether the taxpayer had the requisite profit motive is a question of fact to be determined on the basis of the entire record.  Engdahl v. Commissioner, 72 T.C.

[*12] 659, 666 (1979). The taxpayer's motive regarding his or her profit objective must be determined by an analysis of all the surrounding objective facts, with greater weight given to such objective facts than to the taxpayer's mere statement of intent. Sec. 1.183-2(a) and (b), Income Tax Regs.; see also Churchman v. Commissioner, 68 T.C. 696, 701 (1977). Section 1.183-2(a) and (b), Income Tax Regs., sets forth relevant factors, derived from caselaw, that may be considered in determining whether an activity is engaged in for profit. Jasionowski v. Commissioner, 66 T.C. 312, 321 (1976); Benz v. Commissioner, 63 T.C. 375, 383 (1974). The regulations provide that no one factor is conclusive and that a decision is not reached merely by counting the factors that support each position. Sec. 1.183-2(b), Income Tax Regs. We will deal with the entire record in the context of the parties' arguments. See Taube v. Commissioner, 88 T.C. 464, 479-481 (1987).

Although human-relations training is not the type of activity involving personal pleasure or recreation that is often associated with section 183 questions, section 183 is not limited to so-called hobby losses. For example, the profit-objective analysis of section 183 applies to tax shelter investments, Beck v. Commissioner, 85 T.C. 557, 569 (1985), and to putative trades or businesses, Elliott v. Commissioner, 90 T.C. 960, 969 (1988), aff'd without published opinion,

**[\*13]** 899 F.2d 18 (9th Cir. 1990). On the basis of all of the facts and circumstances, we conclude that Calvin Moyer did not engage in the activity for which he filed the Form 1120S with an actual and honest objective of making a profit during the year in issue. The record as a whole indicates that the Moyers used SLS as a vehicle to claim various personal, living, or family expenses as business deductions. Though our holding considers only whether Calvin Moyer had an actual and honest objective of making a profit and not whether he actually engaged in his alleged business activity, we are skeptical than any such activity took place during the year in issue.

In determining whether Calvin Moyer had an actual and honest objective of making a profit, we first consider whether he conducted SLS's alleged activity in a businesslike manner, a factor described in section 1.183-2(b)(1), Income Tax Regs. Calvin Moyer testified that he did not attempt to determine the expenses of SLS until after the IRS issued notices of deficiency. He also failed to keep accurate books and records. At trial, Calvin Moyer testified that he is "not good at keeping records". SLS neither kept contemporaneous records nor maintained a budget. Because SLS did not keep contemporaneous books and records, Calvin Moyer had no books from which he could evaluate SLS's profitability. Moreover, SLS did not file income tax returns for the 2004 through 2009 taxable years in the

[*14] normal course of business. SLS filed returns only in connection with Tax Court cases, several years after the due dates. At trial when asked whether failing to timely file income tax returns is a good business practice, Calvin Moyer responded: "It certainly isn't." All of these facts indicate a failure to conduct the activity in a businesslike manner, which in turn indicates the lack of a profit motive.

Calvin Moyer was solely responsible for SLS. Despite losing DuPont as a client and having dwindling gross receipts since 2004 and no gross receipts from 2009 through 2015, nothing in the record suggests that he expended much time and effort in attempting to make SLS profitable. See id. subpara. (3). During the tax year in issue Calvin Moyer had no human-relations-training work and did not spend any time or effort developing new business. The type of expenses SLS attempts to deduct for the year are not obviously anything but personal expenses.

Another indication that Calvin Moyer did not have an actual and honest profit objective was the fact that from 2004 through the year in issue, SLS did not report any gains on its Form 1120S but instead reported a sizable loss for each year. SLS reported a loss for each of the years 2004 through 2009. See supra pp.5-6. For each of these years, SLS reported expenses far exceeding its gross receipts. As Calvin Moyer admitted, SLS had no gross receipts for 2010, 2011,

[*15] 2012, 2013, 2014, or 2015.  A record of losses over several years is persuasive evidence that the taxpayer did not have the requisite profit objective.  See sec. 1.183-2(b)(6) and (7), Income Tax Regs.  Although Calvin Moyer may have originally had a profit objective when he incorporated SLS in 1994, we find that this was no longer the case during the year in issue.  By 2009 SLS was merely a convenient device by which the Moyers could try to deduct otherwise nondeductible personal expenses.[5]

Even though Calvin Moyer did not have an actual and honest profit objective, Urve Moyer could still take those deductions that would be permitted if the activity was engaged in for profit, but only to the extent of the gross income reported from the activity.  See sec. 183(b)(2).  Since SLS had no gross income for the 2009 taxable year, Urve Moyer is not entitled to deduct any of the $5,795 loss reported by SLS.

In reaching our holdings, we considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

---

[5]Urve Moyer argues that SLS's lack of operating profits should be overlooked because SLS retains value in its intellectual property.  See sec. 1.183-2(b)(4), Income Tax Regs.  We find this argument without merit because Urve Moyer failed to show that SLS actually owns the rights to any intellectual property.  Moreover, nothing in the record indicates that Calvin Moyer could recapture losses by selling SLS or any intellectual property.

**[*16]** To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.